**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **RYAN WILLIAMS.,**<br>   Plaintiff**,**<br> vs.<br>**CONDENSED CURRICULUM INTERNATIONAL, INC.,**<br>   Defendant**.** | Case No. 4:20-cv-05292-YGR<br><br>**ORDER: (1) DENYING MOTION TO TRANSFER VENUE; AND (2) SETTING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. No. 11 |

Plaintiff Ryan Williams brings this action against defendant Condensed Curriculum International, Inc. ("CCI") for: (1) breach of written employment agreement; (2) misclassification as independent contractor; (3) inaccurate wage statements; (4) failure to provide wages when due; (5) failure to reimburse business expenses; (6) unfair business practices; (7) wrongful termination in violation of public policy; (8) retaliation; (9) injunctive relief; (10) violation of the Private Attorney General Act ("PAGA"). (Dkt. No. 1-1 (First Amended Complaint ("FAC") at Exh. 7 ¶¶ 20-88.) Williams alleges violations of the Labor Code, the Business and Professions Code, the Fair Employment and Housing Act, and PAGA, all under California law. (*See id*.) Williams filed the FAC in the Superior Court of California, County of Napa on July 9, 2020. (Dkt. No. 1 Notice of Removal ("NOR") ¶ 5.) CCI removed the case to this Court on July 31, 2020 on the basis of diversity jurisdiction. (NOR ¶ 9.)

Now before the Court is CCI's motion to transfer venue to the Northern Division of the United States District Court for the District of Maryland pursuant to 28 U.S.C section 1404(a). (Dkt. No. 11.) Having carefully considered the pleadings and the papers submitted, and for the reasons set forth more fully below, the Court hereby **DENIES** the motion to transfer venue.

## I. BACKGROUND[1]

CCI promotes itself as providing innovative content solutions and supporting educational institutions with eLearning and traditional content focused on healthcare and other disciplines. (FAC ¶ 13.) CCI is incorporated in New Jersey, with its principal place of business in Fairfield, New Jersey and Frederick, Maryland. (NOR ¶¶ 12-16.) Williams alleges that CCI is authorized to conduct business in California, currently employs over fifty individuals in California, has substantial minimum contacts with the state, and avails itself of California markets. (FAC ¶ 11.)

Williams, currently residing in Napa, California, was employed by CCI as Director of Partnerships from September 16, 2013 to March 6, 2020 and performed his work remotely from Napa since January 2014. (FAC at ¶ 6.; Dkt. No. 15-1, Williams Decl. ¶ 2.) CCI hired Williams to work as a commissioned salesperson. (FAC at ¶ 14.) Williams alleges that CCI terminated him after he raised complains about failure to pay wages and other illegal practices. (*Id*. at ¶ 19.) Williams estimates he is owed around $883,738 in unpaid commissions. (*Id*. at ¶ 16.) On March 14, 2020, CCI filed a complaint against Williams and another defendant in the Circuit Court for Frederick County, Maryland for intentional misrepresentation, breach of fiduciary duties, tortious interference with contractual relations, and misappropriation of trade secrets. (Dkt. No. 17, Ex.1.) On September 30, 2020, that court denied Williams a motion for reconsideration of a denial of a motion to dismiss for lack of personal jurisdiction. (*Id*. at Ex. 6, p. 80.)

## II. LEGAL STANDARD

Under 28 U.S.C. section 1404(a), a district court has discretion to transfer an action to

---

[1] CCI asks this Court to take judicial notice of the complaint and subsequent court proceedings in *CCI v. Williams, et al*, No. C-10-cv-20-000229 filed in the Circuit Court of Frederick County, Maryland. (Dkt. No. 17.) The Court **GRANTS** the request for the purposes of this motion. The Court may take "notice of proceedings in other courts, both within and without the federal justice system, of those proceedings have direct relation to matters at issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc*., 971 F.2d 244, 248 (9th Cir. 1992) (internal quotations and citation omitted). CCI also makes evidentiary objections to the declarations of Williams, Gillian Schultz, Caitlin Bombard, and Diyari Vázquez. For purpose of this motion only, the Court finds these objections to be meritless, and therefore **OVERRULES** these objections.

another forum. That statute provides:
> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought….

Section 1404(a) "does not condition transfer on the initial forum's being 'wrong' . . . [a]nd it permits transfer to any district where venue is also proper . . . or to any other district to which the parties have agreed by contract or stipulation." *Atlantic Marine Const. Co., Inc. v. United States Dist. Court*, 571 U.S. 49, 59 (2013). The moving party carries the burden of showing that the transferee district is the more appropriate forum. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497 (9th Cir. 2000). The purpose of a transfer under section 1404(a) is "to prevent the waste of time, energy, and money and to protect litigants, witnesses[,] and the public against unnecessary inconvenience and expenses." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotations and citation omitted).

Courts considering transfer must first determine whether the action could have been brought in the target district in the first instance. *See Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960). An action could have been brought in any court that has subject matter jurisdiction over the claims and personal jurisdiction over the defendant, and where venue would have been proper. *See id*. Here, Williams argues that the "proper venue" is the Northern District of California under 28 U.S.C section 1391, but does not dispute that the action could have been brought up in the Northern Division of the United States District Court for the District of Maryland.[2]

"In the typical case . . . a district court considering a [section] 1404(a) motion . . . must evaluate both the convenience of the parties and various public-interest considerations." *Atlantic Marine*, 571 U.S. at 62. If the action could have been brought in the target district, courts then undertake an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622). Relevant factors the Court may consider include: (1) plaintiff's choice of forum, (2) convenience of the

---

[2] Williams spends a significant amount of its opposition arguing that this Court has jurisdiction over CCI. The issue in this motion is not whether this Court has jurisdiction over CCI, which CCI does not contest, but whether a transfer should be granted to a more appropriate venue.

1   parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each
2   forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local
3   interest in the controversy, and (8) the relative court congestion and time of trial in each forum. *Vu*
4   *v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009). The list is non-
5   exclusive, and courts may consider other factors. *See Williams v. Bowman*, 157 F. Supp. 2d 1103,
6   1106 (N.D. Cal. 2001) (noting that this list of factors "does not exhaust the possibilities"). Thus,
7   the Court here also considers differences in the costs of litigation. *See Jones*, 211 F.3d at 498-99
8   (9th Cir. 2000). Finally, weighing of the factors is "best left to the discretion" of the Court.
9   *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

**III.   ANALYSIS**

Here, CCI argues that transfer is appropriate because Williams' choice of forum should not control, and the 1404(a) factors weigh in favor of transfer to the Northern Division of the District of Maryland. The Court addresses relevant factors below.

**A.   Plaintiff's Choice of Forum**

"While a plaintiff's choice of forum always weighs against transfer under section 1404(a), a court considering transfer must determine how much weigh to give this choice under the circumstances." *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1040 (N.D. Cal. 2020) (internal quotations and citation omitted). In making this determination, "courts consider the extent of the parties' contacts with the chosen forum, including contacts relating to a plaintiff's cause of action." *Id.* (citing *Lou v. Belzberg*, 834 F.2d 720, 739 (9th Cir. 1987)). "A plaintiff's choice of forum receives only minimal deference if the operative facts did not occur within the forum and the forum has no interest in the parties or subject matter." *Id.* (citation omitted). "In contrast, where there is no evidence that plaintiffs engaged in forum shopping and both plaintiffs and defendants have significant contacts with the Northern District of California, plaintiff's choice of forum carries significant weight." *Id.* (internal quotations and citation omitted).

In the instant action, CCI contends that the Court should not give Williams' choice of forum deference. The amount of deference turns on the extent of the parties' contact with this forum, particularly those related to Williams' causes of action. With respect to the operative facts,

4

1   CCI claims that all alleged acts giving rise to the complaint, namely the hiring, terms and
2   conditions of employment, duties and responsibilities, compensation, and termination decisions
3   impacting Williams' employment occurred in Frederick and other locations in Maryland. (Dkt.
4   No. 11-5, Ruziska Decl., ¶¶ 3, 11-14.) Williams interviewed in Frederick, where he accepted the
5   offer of employment. (*Id*. at ¶ 3.) Participants in the interview included the following CCI
6   employees: Thomas Ruziska (Director and Williams' direct supervisor), Kevin Bates (Business
7   Development Manager), Katie Staley (College Operations and Business Manager), and Danielle
8   Grinder (College Operations and Business Manager). (*Id*. at ¶¶ 1, 4, 12.) Williams traveled to
9   Maryland from 2014 to 2016 to attend various meetings and trainings (Williams alleges he did not
10  conduct any business) (*Id*. at ¶ 9; Williams Decl., ¶ 27.) From Maryland, Ruziska, Bates, Staley,
11  and Grinder provided Williams support. (Ruziska Decl. at ¶¶ 11-12.) Compensation decisions
12  were made in Frederick. (*Id*. at ¶ 13.) The termination decision was made in Frederick as well,
13  with Ruziska, Bates, Staley, and Grinder present. (*Id*. at ¶ 14.)

14  Simply because CCI made decisions in Maryland does not negate the local impact of those
15  decisions. *See Shultz v. Hyatt Vacation Mktg. Corp.*, No. 10-cv-04568-LHK, 2011 WL 768735 at
16  *5 (N.D. Cal. Feb. 28, 2011) ("Simply because [defendant] determines policies or makes
17  compensation decisions in Florida does not negate the local impact of those decisions when they
18  are implemented elsewhere"). Williams' opposition, however, elides CCI's allegations regarding
19  the operative facts. Certainly, Williams daily work was based in Napa and his paychecks were
20  deposited in a bank account in California, but this does not directly respond to CCI's allegations
21  that the central facts related to the causes of action happened in Maryland.

22  The bulk of Williams' opposition is that both Williams and CCI have substantial contacts
23  with California. Regarding Williams, CCI unpersuasively casts Williams' work in this forum as
24  minimal. Williams performed remote work from Napa as contemplated. CCI expected him to
25  grow a West Coast presence. (Williams Decl. ¶ 10.) Williams partnered with and regularly
26  serviced clients within California. (*Id*. at ¶¶ 12.) During his time of employment, Williams
27  visited Maryland six times for a total of nineteen days over a period of seven years, a relatively
28  minor timeframe. (*See* Williams Decl. ¶¶ 22-28.) CCI cannot allege that Williams performed

only "some" of his work from Napa. *See Labrie v. Cobain*, No. cv-12-7793-GHK (JCGx), 2013 WL 12131720, at *2 (C.D. Cal. Mar. 15, 2013) (determining that a substantial part of the facts giving rise to the plaintiff's claim did not occur in the Central District of California where the plaintiff traveled to Los Angeles for approximately 16 days out of a total 379 days that she worked for the defendant).

CCI alleges that at the time CCI terminated Williams, Williams was the only employee in California and CCI did not maintain any office in the state. (Ruziska Decl. ¶ 15.) But CCI does not persuade that its contacts are minimal. Indeed, part of this action involves CCI's classification of independent contractors. CCI registered to do business as a foreign corporation in California around January 2017. (Williams Decl. ¶ 5; Dkt. No. 15-5 at 1.) From 2013 to 2019, CCI engaged with more than forty colleges and university partners in California. (Dkt. No. 15-12, Bombard Decl. ¶ 5.) CCI hired around two hundred instructors in California from August 2008 to May 2020. (Dkt. No. 15-11, Schultz Decl., ¶ 4.)

Williams also relies on CCI's contacts with California generally. "[F]or the purposes of establishing claim-specific contacts, activity outside the district itself is generally discounted." *Schultz*, 2011 WL 768735, at *5. Here, Williams does not disaggregate CCI's contacts with this forum vis-à-vis California at large. Some contacts are presumably within this district (e.g. a partnership with San Francisco State University), but others are not (e.g. a partnership with East Los Angeles College). (*See* Williams Decl. ¶ 13.) Similarly, Williams provides a list of California-based independent contractors CCI hired in 2019 (fifty-five of around six hundred nationwide), but does not explain where they work or worked, where they reside, or why they relate to this action's operative facts. (*See id*. at ¶ 19.)

On balance, Williams and CCI have substantial contacts with California, but CCI persuades that the operative facts related to Williams' causes of action by and large happened in Maryland. Nonetheless, there is no allegation that Williams engaged in forum shopping, and CCI's arguments do little to persuade the Court to overlook the general proposition that a plaintiff's choice in venue is to be given deference. This is especially so where Williams is further pursuing California state law claims for work performed in this state and district. Thus, because

6

1    Williams' choice of forum deserves deference, this factor weighs against transfer.

### B.  Convenience of the Parties and Witnesses

"Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen*, 376 U.S. at 645-46.  "Thus, transfer should not be granted if the effect is simply to shift the inconvenience to the plaintiff." *Epic*, 435 F. Supp. 3d at 1042 (internal quotations and citations omitted).  "[T]he convenience of the witnesses, particularly non-party witnesses, is often the most important factor." *Id.* (citing *Grossman v. Johnson & Johnson*, No. 14-cv-03557-VC, 2015 WL 1743116, at *1 (N.D. Cal. Apr. 13, 2015) (citation omitted)).  "To evaluate witness convenience, courts must consider not only the number of witnesses, but also the nature and quality of their testimony.'" *Id.* (internal quotations and citation omitted).  "[C]ourts generally give less consideration to the convenience of party witnesses or witnesses employed by a party because these witnesses can be compelled by the parties to testify regardless of where the litigation will occur." *Id.* (citing *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1132 (C.D. Cal. 2009)).  "In establishing inconvenience to witnesses, the moving party must name witnesses, state their location, and explain their testimony and its relevance." *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1193 (S.D. Cal. 2007) (citation omitted).  "The court consider[s] not simply how many witnesses each side has and the location of each, but also the importance of the witnesses[.]" *Id.* (alterations in original) (internal quotation and citations omitted).  "'Convenience of witnesses'" include both non-party witnesses outside the scope of the Court's subpoena power and the geographic location of any witnesses likely to testify in this case." *Id.*

With respect to the parties, CCI alleges potential financial hardships and business disruption from litigating in California.  But Williams also does not generally travel to Maryland.  (Williams Decl. ¶ 19.)  Transferring the action would merely shift the inconvenience.  Regarding witnesses, CCI identifies four employee witnesses (Grinder, Bates, Ruziska, and Staley) living in Maryland for whom traveling would be cost prohibitive and inconvenient.  Their testimony is relevant to all of Williams' causes of action.  However, given the individuals are employee witnesses who can be compelled to testify, the Court gives them less consideration. *See Epic*, 435

7

1   F. Supp. 3d at 1042; *see also Garlough v. Trader Joe's Co.*, No. 15-cv-01278-TEH, 2015 WL
2   4638340, at *4 (N.D. Cal. Aug. 4, 2015) ("While the convenience of current ... employees
3   certainly favors transfer, current employees are party witnesses, and their convenience is weighed
4   less heavily than that of non-party witnesses"). That said, "[e]ven where a witness is an employee
5   of a party and will be paid, the disruption is still a hard fact. The expenses of transportation, the
6   housing and meals, even if borne by a party, are nonetheless authentic outlays." *In re Funeral*
7   *Consumers Antitrust Litig.*, No. C 05-01804 WHA, 2005 WL 2334362, at *4 (N.D. Cal. Sept. 23,
8   2005). When the interests of a defendant's employee witnesses favor transfer, at a minimum,
9   those interests should be considered. *Airwair Int'l, Ltd. v. Cels Enters., Inc.*, No. C-13-4312
10  EMC, 2014 WL 988752, at *1 (N.D. Cal. Mar. 10, 2014); *Herrera v. Command Sec. Corp.*, No.
11  C-12-4032 EMC, 2012 WL 6652416, at *5 (N.D. Cal. Dec. 20, 2012).

12  Regarding third party witnesses, CCI does not identify any, which weighs against transfer.
13  *See DeFazio v. Hollister Emp. Share Ownership Tr.*, 406 F. Supp. 2d 1085, 1090 (E.D. Cal. 2005)
14  (rejecting moving party's rationale that witnesses would be inconvenienced because the moving
15  party failed to identify any non-party witnesses by name and did not explain why maintaining the
16  action in California would affect them).

17  For his part, Williams identifies only two former employees, but does not explain the
18  relevance of their testimony and both express willingness to travel. (*See* Schultz Decl. ¶ 7;
19  Bombard Decl. ¶ 7.) The crux of Williams' argument is his intent to call a number of past and
20  present instructors as witnesses regarding the misclassification claim. (*See* Dkt. No. 15-13,
21  Vázquez Decl. ¶ 2.) Williams alleges that it is likely that these witnesses will need to be
22  subpoenaed, which would be difficult in Maryland. (*Id*. at ¶ 3.) Williams also anticipates
23  subpoenaing information from potentially eight educational institutions located in California, as
24  well as presenting an expert witness from California (a yet to be identified attorney). (*Id*. at ¶¶ 4-
25  5.) Williams, however, does not say whether these hypothetical witnesses reside in California or
26  provide any information other than general assertions. "[Williams'] lack of specificity does little
27  to show that witness convenience favors California." *See Parr v. Stevens Transp. Inc.*, No. C 19-
28  02610-WHA, 2019 WL 4933583, at *3 (N.D. Cal. Oct. 7, 2019); *see also Brown, et al v.*

8

*Abercrombie & Fitch Co.*, No. 4:13-cv-05205 YGR, 2014 WL 715082, at *4 (N.D. Cal. Feb. 14, 2014) (rejecting plaintiff's reliance on "unidentified, hypothetical witnesses"); *Gupta v. Wipro Ltd.*, No. 5:16-cv-05283-EJD, 2017 WL 1113316, at *3 (N.D. Cal. Mar. 24, 2017) ("…of the individuals that are listed as working in California, Plaintiff provides no explanation as to who they are, what their anticipated testimony would be, or how such testimony would be relevant to this case").

In sum, neither party identifies any non-party witnesses who would be inconvenienced by either granting or denying the motion to transfer. While for CCI transporting its employees to California would be inconvenient, this is not enough to justify transferring this action since it would merely shift inconveniences. *See Hendricks v. StarKist Co.*, No. 13-cv-729 YGR, 2014 WL 1245880, at *4 (N.D. Cal. Mar. 25, 2014) (rejecting moving party's claim that this factor weighs for transfer even if "having to transport its own testifying employees to California will be highly inconvenient and costly to the company"). Accordingly, since neither party makes a persuasive case, this factor is neutral between the two venues.

### C.  Ease of Access to Evidence

"In assessing the ease of access to proof, courts look at the location of records and documents." *DeFazio*, 406 F. Supp. 2d at 1091 (citation omitted). "The moving party must show the location and importance of the records." *Id.* (internal quotation and citation omitted). "[I]n the age of electronically stored information, the ease of access to evidence is neutral [when] much of the evidence…will be electronic documents, which are relatively easy to obtain in any district." *See Epic*, 435 F. Supp. 2d at 1091 (internal quotation and citation omitted).

Here, all documents related to Williams' claims are located in Maryland. (Ruziska Decl. ¶ 16.) However, CCI does not otherwise specifically allege any difficulty in obtaining the records. *See DeFazio*, 406 F. Supp. 2d at 1091 ("general allegations that transfer is needed for the ease of obtaining records . . . are not enough") (citation omitted). Given that the records could easily be compiled electronically, if not already available in this format, this factor is neutral.

### D.  Local Interest in the Controversy

The parties dispute whether California or Maryland has a greater interest in the

controversy. CCI avers that Maryland has greater interest in deciding the controversy because the action involves a business located there, though CCI does not specify how many individuals it employs in Maryland. *See Bloom v. Express Servs., Inc.*, No. C 11-00009 CRB, 2011 WL 1481402, at *5 (N.D. Cal. Apr. 19, 2011) (even if California has a substantial interest in ensuring that businesses comply with its laws, and even if relevant agreements were negotiated in California, Oklahoma has a substantial interest in "deciding controversies involving businesses headquartered there, and that employ a substantial number of its citizens").

There is, however, significant merit to Williams' claim that California has strong interest in adjudicating labor disputes concerning California state residents. *See Karl v. Zimmer Biomet Holdings, Inc.*, No. C 18-04176 WHA, 2018 WL 5809428, at *2 (N.D. Cal. Nov. 6, 2018) (overriding a forum selection clause, in a putative class action and where the operative facts occurred in California, "California expresses a strong public policy to protect employees from litigating labor disputes outside of their home state"); *Moore v. C.R. England, Inc.*, No. 09-1814 SC, 2009 WL 3458303, at *5 (N.D. Cal. Oct. 23, 2009) ("California has a significant interest in enforcing its wage and labor laws . . . in promoting the use of California's class action device . . . [and] an interest in providing its citizens with a forum in California in which its Citizens can vindicate their rights under California law"). Here, the Court is persuaded based on the overall record that California has a significant local interest in this case where Williams is a California state resident, CCI maintains and specifically directs business into the state, and California has an interest in ensuring the application of its labor laws over California state residents.

Accordingly, this factor is in favor of California and against transfer.

### E. Familiarity of Each Forum with the Applicable Law

There is some merit to Williams' claims that an action brought solely under California law should be adjudicated in California. *See in re Ferrero Litigation*, 768 F. Supp. 2d 1074, 1081 (S.D. Cal. 2011) (this factor weighs against transfer because "[a] California district court is more familiar with California law than district courts in other states.") However, even if this Court is likely more familiar with California law than the federal court in Maryland, "either forum is capable of applying the law of the other's forum's state, even if one forum may be more familiar

1  with the governing law than the other." *See Burke v. USF Reddaway, Inc.*, No. 2:12-cv-02641-
KJM, 2013 WL 85428, at *6 (E.D. Cal. Jan. 8, 2013). Furthermore, neither party suggests that
this action will involve a complex issue of state law or require deciding a conflict of law that may
tilt this factor towards either of the forums. *See Van Dusen,* 376 U.S. at 645 (it is appropriate to
have the trial of a diversity case in a forum that is at home with the state law that governs the case,
especially where the state law is difficult or unclear). Accordingly, this factor is neutral, or weighs
slightly in favor of California and against transfer.

### F. Court Congestion

Without providing any evidence, both parties claim that court congestion is neutral. In fact, as of June 30, 2020, the Northern District of California had 870 pending actions per judgeship, while the U.S. District Court of Maryland had 589. *See Federal Court Management Statistics as of December 31, 2019*, available at https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2020/06/30-1 (last visited November 6, 2020). Additionally, the Northern District of California had 598 weighted filings per judgeship while the District Court of Maryland had had 381 weighted filings per judgeship, the median time for disposition of civil cases was 10.1 months in the Northern District of California and 12.2 months in the District Court of Maryland, and the median time to trial was 29.3 months in the Northern District of California and 28 months in the District Court of Maryland. *Id.* But a court "should not transfer a case on the basis of docket congestion after determining the balance of the other factors weighs against transfer." *Costco*, 472 F. Supp. 2d at 1196. In addition, "[t]he real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket." *Gates Learjet Corp. v. Jenson*, 743 F.2d 1325, 1337 (9th Cir. 1984). Here, there is no meaningful difference in the median time from filing to disposition and filing to trial in both courts. Accordingly, this factor is neutral.

### G. Differences in the Cost of Litigation

"[T]ransfer is not appropriate merely to shift the inconvenience from one party to another." *Safarian v. Maserati N. Am., Inc.*, 559 F. Supp. 2d 1068, 1071 (C.D. Cal. 2008). "A court may

11

also consider the relative means of the parties in deciding a transfer motion." *Hendricks*, 2014 WL 1245880 at*5 (internal quotations and citation omitted) (costs of litigation neutral when moving party is a large corporation and does not show how transfer would do more than simply lower its costs but raise plaintiffs). "[C]orporations are better-equipped than individuals to absorb increased litigation costs." *Shultz*, 2011 WL 768735, at *6.

CCI alleges that the costs of litigation will be higher in California because all documents are located in and four employee witnesses reside in Maryland. There is no showing, however, that the costs would be excessive in light of CCI's resources. Williams also does not provide any evidence other than referring to his own costs and hypothetical third-party witnesses who would need to travel to Maryland. On balance, transfer would decrease CCI's costs but increase Williams' costs. Given that CCI is likely better equipped than Williams to absorb any increased litigation cost, this factor is thus neutral or weighs slightly in favor of California and against transfer.

### H.  Balance of the Factors

Here, most of the factors either weigh in favor of California and against transfer or weigh neutrally between California and Maryland. Accordingly, the Court concludes that CCI has not met its burden of showing that the Northern Division of the United States District Court for the District of Maryland is the more appropriate forum.

### IV.  CONCLUSION

For the foregoing reasons, the Court **DENIES** the motion to transfer venue to the Northern Division of the United States District Court for the District of Maryland. The Court further **SETS** a case management conference for **December 14, 2020** at **2:00 PM PST**, to be held via the Zoom platform. A case management statement is due by **December 7, 2020**.

This Order terminates Docket Number 11.

**IT IS SO ORDERED**.

Dated: November 13, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**