UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| RYAN WILLIAMS,<br><br>         Plaintiff,<br><br>    v.<br><br>CONDENSED CURRICULUM INTERNATIONAL,<br><br>         Defendant. | Case No. 20-cv-05292-YGR   (RMI)<br><br>**ORDER RE: DISCOVERY DISPUTE**<br><br>Re: Dkt. No. 30 |

Now pending before the court is a jointly-filed letter brief (dkt. 30) presenting a series of discovery disputes that boil down to Plaintiff's numerous requests to compel various items of discovery. Plaintiff's requests are granted in part and denied in part as set forth below.[1]

## BACKGROUND

On July 31, 2020, this case was removed to this court from the Napa County Superior Court. *See* Notice (dkt. 1). Plaintiff is a California resident who was previously employed by Defendant as a commissioned salesperson; the employment contract fixed Plaintiff's starting salary at $60,000 per year while also setting forth the following commission schedule: (1) 10% for each e-learning student sales contracts or relationship that Plaintiff would secure on Defendant's behalf; and, (2) 5% for "each instructor led training student sale from contracts or relationships Plaintiff contracted with" on Defendant's behalf. *See* FAC (dkt. 1-1) at 32-34. Defendant is a New Jersey corporation engaged in the business of providing content, support services, and staffing solutions for various educational institutions. *See id.* at 33-34.

---

[1] Pursuant to Civil Local R. 7-1(b), the court finds that this matter is suitable for disposition without oral argument.

1        At some point, the employer-employee relationship between the Parties soured and
2   devolved into litigation. Reportedly, following Plaintiff's termination, Defendant first sued
3   Plaintiff on March 19, 2020, in state court in Maryland for misrepresentation, breach of fiduciary
4   duty, constructive fraud, tortious interference with contractual relations, misappropriation of trade
5   secrets, and breach of contract – as a result of which Defendant pursued injunctive relief, and
6   (presumably) certain measures of damages as well. *See* Ltr. Br. (dkt. 30) at 4. One day later,
7   Plaintiff filed the instant action. *See* Compl. (dkt. 1-1) at 6-20. A few months later, Plaintiff filed
8   an amended complaint ("FAC") through which he claimed (on his own behalf and on behalf of
9   other similarly aggrieved individuals) the following claims: breach of contract; misclassification
10  as an independent contractor in violation of Cal. Labor Code §§ 226.8, 2750.3, and 2753;
11  inaccurate wage statements in violation of Cal. Labor Code § 226; failure to provide wages when
12  due in violation of Cal. Labor Code §§ 201, 202, and 203; failure to reimburse business expenses
13  in violation of Cal. Labor Code § 2802; unfair business practices in violation of Cal Bus. & Prof.
14  Code § 17200; wrongful termination in violation of public policy; retaliation in violation of Cal.
15  Gov. Code § 12940; and, violation of the Private Attorney General Act (Cal. Labor Code § 2698)
16  ("PAGA"). *See generally* FAC (dkt. 1-1) at 31-46. Plaintiff seeks injunctive relief (as to
17  Defendant's "illegal covenant not to compete") as well as various measures of damages. *Id*. at 43-
18  44, 45.

19       Given the near-simultaneous filing of these two lawsuits – there will be a great deal of
20  overlap between the Parties' claims and defenses in each of their respective lawsuits. Through the
21  Maryland action, Plaintiff reports that Defendant has accused him of having "been engaged in
22  direct competition with CCI for nearly two years, acting as VP of Sales for a competitor and
23  soliciting clients, poaching opportunities, and directing business away from CCI." *See* Ltr. Br.
24  (dkt. 30) at 6. In this action, Plaintiff alleges that despite working diligently for Defendant during
25  the past 7 years, devoting over 50 hours a week to his work, and generating Defendant millions of
26  dollars in revenue – Defendant refused to pay him his earned commissions. *See* FAC (dkt. 1-1) at
27  34. Plaintiff alleges that Defendant owes him approximately $883,738 in unpaid commissions for
28  the past 4 years. *Id*. Plaintiff also alleges that "[i]n an apparent attempt to avoid payroll taxes,"

2

1  Defendant paid him and other aggrieved employees their wages through a Form 1099 by
2  intentionally misclassifying them as independent contractors, thereby avoiding their obligation to
3  pay employer-side payroll taxes, which in turn "forced Plaintiff and other aggrieved employees to
4  incur self-employment tax." *Id*. at 34-35. Further, Plaintiff contends that Defendant also failed to
5  reimburse him and other aggrieved employees for expenses associated with their use of a home
6  office, cellular telephone, and the entertainment of clients. *Id*. at 35. Lastly, Plaintiff maintains that
7  as a result of his complaints about these practices, Defendant wrongfully terminated his
8  employment, threatened him with a frivolous lawsuit in an attempt to prevent him from enforcing
9  his rights through this litigation, and attempted to enforce an illegal non-compete agreement while
10 interfering with his business relationships and his other employment opportunities. *Id*.

11 Because it is relevant to the scope of discovery in this case, it should also be mentioned
12 that Defendant has pleaded more than fifty affirmative defenses in this case. *See* Def.'s Answer
13 (dkt. 1-1) at 50-59. Given that "Rule 26 allows a party to obtain discovery concerning any non-
14 privileged matter that is relevant to any claim or defense," (*see e.g.*, *Glass Egg Dig. Media v.*
15 *Gameloft, Inc.*, No. 17-cv-04165-MMC (RMI), 2019 U.S. Dist. LEXIS 149896, at *13 (N.D. Cal.
16 Sep. 3, 2019)), Defendant's rather enthusiastic approach to pleading affirmative defenses has
17 essentially operated to significantly broaden the scope of discovery. Just a sampling of
18 Defendant's 51 affirmative defenses are as follows: statute of limitations; estoppel; waiver; accord
19 and satisfaction; consent; ratification; Plaintiff lacks standing; failure to mitigate damages; unclean
20 hands; laches; "Plaintiff was paid all wages due to him on a timely basis"; Defendant acted in
21 good faith and had reasonable grounds for believing that its method of compensation was lawful;
22 Plaintiff's claims for waiting time penalties or liquidated damages are barred because Defendant
23 did not willfully withhold wages over which there was no good faith dispute; the Labor Code
24 provisions establish penalties that are unjust, arbitrary, oppressive, confiscatory, unconstitutional,
25 and disproportionate to any damage or loss incurred as a result of Defendant's conduct; any
26 amounts owed to Plaintiff are offset to the extent of amounts owed by Plaintiff; Plaintiff's losses
27 are not compensable because they are speculative and uncertain; Defendant was unaware and had
28 no reason to know of the allegedly unpaid business expenses; the representative claims are barred

3

because they are unmanageable due to the prevalence of individualized issues requiring individualized testimony at trial; the representative claims are barred for failure to exhaust administrative remedies; Plaintiff is not a proper representative; Plaintiff is not an aggrieved employee; the claims for penalties are barred by due process; the maintenance of non-certified or derivative claims related thereto as representative actions violate due process; the liability standard for California's unfair competition law and PAGA are vague and subjective in that they permit retroactive, random, arbitrary, and capricious punishment that serves no legitimate governmental interest; the restitution claims are disguised and impermissible forms of damages claims; restitution should be barred as it would unjustly enrich Plaintiff; all causes of action are barred by the exclusive remedy provisions of the Workers' Compensation Act; if Plaintiff has suffered mental or emotional symptoms it is due to a pre-existing psychological disorder or an alternative concurrent cause; Plaintiff's claims are barred because Defendant has at all times exercised business judgment in good faith; Defendant had legitimate non-retaliatory motives for its actions; after-acquired evidence independently justifies Plaintiff's termination; Plaintiff's employment contract was void because there was no meeting of the minds, the terms were not sufficiently definite, there was a failure of consideration, Plaintiff failed to fulfill conditions precedent, fraudulent conduct voided the contract, and Plaintiff breached the agreement first (excusing further performance by Defendant); and, if Plaintiff should recover damages, they should be abated, apportioned, reduced, or off-set to the extent any other parties' actions (including Plaintiff's) caused or contributed to the damage. *See* Def.'s Answer (dkt. 1-1) at 51-59.

## LEGAL STANDARD

When moving to compel discovery, the moving party has the burden of demonstrating relevance. *Hegarty v. Transamerica Life Ins. Co.*, No. 19-cv-06006-MMC (RMI), 2021 U.S. Dist. LEXIS 203386, at *4 (N.D. Cal. Oct. 21, 2021). Beyond this, it should be noted that "[w]hile it is true that the standard for relevance is not very demanding (*see* F.R.E. 401 — evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action), the rule still requires that any evidence that is to be offered must 'logically advance a material aspect of the party's case.'"

4

1  *In re Glumetza Antitrust Litig.*, No. 19-cv-05822-WHA (RMI), 2020 U.S. Dist. LEXIS 113361, at
2  *31-32 (N.D. Cal. June 29, 2020). Furthermore, in order to succeed on a motion to compel, a
3  moving party bears the burden of not only demonstrating relevance, but also that it has satisfied
4  proportionality and other requirements of Rule 26. *See Rodriguez v. Barrita, Inc.*, No. 09-04057
5  RS-PSG, 2011 U.S. Dist. LEXIS 134079, at *4 (N.D. Cal. Nov. 21, 2011). In light of this, courts
6  are required to limit discovery if its burden or expense outweighs its likely benefit; this is "the
7  essence of proportionality," a frequently ignored or overlooked discovery principle. *See e.g.*,
8  *Hegarty*, 2021 U.S. Dist. LEXIS 203386, at *5; *see also Mediatek, Inc. v. Freescale
9  Semiconductor, Inc.*, No. 11-5341 YGR (JSC), 2013 U.S. Dist. LEXIS 122911, at *18-19 (N.D.
10 Cal. Aug. 28, 2013) ("[U]nder Rule 26's proportionality analysis, the Court must weigh the
11 burden versus the benefit of the discovery sought . . . [and] strike a balance between ensuring that
12 parties have access to relevant information regarding their claims and defenses, and the burden on
13 the producing party of providing the discovery sought.").

## DISCUSSION

The Parties' discovery disputes have been divided into three categories. The first category concerns PAGA discovery – essentially, Plaintiff seeks "documents sufficient to identify the California aggrieved employees and documents necessary for Plaintiff to evaluate the PAGA claim." Ltr. Br. (dkt. 30) at 4. Specifically, Plaintiff seeks to compel the information encompassed in RFP Nos. 30-35 and 37-38. *See* Ltr. Br., Exh. B (dkt. 30) at 16-20, 22-23. The undersigned has reviewed each of these RFPs and is satisfied as to their relevancy and proportionality. Defendant opposes this discovery on grounds that "Plaintiff does not have standing to pursue a PAGA action because he cannot show he suffered the alleged injuries asserted in the instant action." *See* Ltr. Br. (dkt. 30) at 5. The only authority cited for this proposition is a generic appellate case that establishes the broad proposition that claims must establish Article III standing. *See id*. (citing *Magadia v. Wal-Mart Associates, Inc.*, 999 F.3d 668 (9th Cir. 2021)). Defendant makes no effort to tether this generic and broad statement to the present context – a discovery dispute. In other words, Defendant seems to be either putting its cart before the horse in prematurely making a summary judgment sort of argument, or Defendant appears to be making an argument in

5

opposition to discovery that maybe should have been asserted in a motion to dismiss that was never filed. In either case, because Defendant has given such short shrift to its assertion that a supposed lack of standing to bring a PAGA claim justifies blocking discovery, the undersigned deems this issue as totally undeveloped and therefore abandoned. *See e.g.*, *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (deeming abandoned all issues raised in a brief not supported by argument); *Grewal v. Choudhury*, 377 F. App'x 617 (9th Cir. 2010) (undeveloped issue not supported by argument is deemed abandoned). For that reason, Defendant's objection to producing the PAGA discovery encompassed in RFP Nos. 30 through 35, and 37 through 38, is **OVERRULED** and Defendant is **ORDERED** to produce those materials forthwith.

Defendant alternatively submits (*see* Ltr. Br. (dkt. 30) at 6) that if such material is to be provided to Plaintiff, any efforts to contact potential class members should be preceded by the issuance of opt-out notices pursuant to the procedures described in *Belaire-West in Williams v. Superior Court*, 3 Cal. 5th 531, 220 Cal. Rptr. 3d 472, 398 P.3d 69 (2017) (holding that a notice providing employees and potentially aggrieved employees under PAGA with the option to opt out of disclosure of their contact information in order to protect their privacy interests). Defendant's reasoning in this regard is that "contract instructors would not understand the nature of why they would be contacted if we were to provide contact information by way of the protective order and for that reason, [Defendant] requests that a proper *Belaire* notice be provided before proceeding." Ltr. Br. (dkt. 30) at 6. The undersigned disagrees because these concerns (contract instructors not understanding why they are being contacted) can be appropriately addressed without saddling the Parties with the costs associated with the *Belaire-West* procedure. Accordingly, for the reasons discussed below, Defendant's request for the employment of the *Belaire-West* procedure is **DENIED**.

In the present context, courts in this circuit have most often found that protective orders sufficiently protect putative class members and aggrieved employees' privacy interests in the confidentiality of their contact information. *See Austin v. Foodliner, Inc.*, No. 16-CV-07185-HSG (DMR), 2018 U.S. Dist. LEXIS 36685, 2018 WL 1168694, at *2 (N.D. Cal. Mar. 6, 2018) (holding that *Belaire-West* notice was not required when plaintiffs requested putative class

members and PAGA aggrieved employees' telephone numbers because a protective order would sufficiently protect the privacy interests at stake); *see also Minns v. Advanced Clinical Empl. Staffing LLC*, No. C 13-03249 SI, 2014 U.S. Dist. LEXIS 65198, 2014 WL 4352343, at *2 (N.D. Cal. May 9, 2014) ("Courts have held that producing discovery pursuant to a protective order is one way to protect the privacy interests of putative class members."). The court will initially note that the disclosure of "contact information alone [] involves no revelation of personal or business secrets, intimate activities . . . and threatens no undue intrusion to one's personal life.[]" *Tierno v. Rite Aid Corp.*, No. C 05-02520 TEH, 2008 U.S. Dist. LEXIS 58748, 2008 WL 3287035, at *3 (N.D. Cal. July 31, 2008) (internal citation and quotation marks omitted). Then there is the fact that the terms of the protective order that is in place in this case will strictly limit the use and distribution of the information that is the subject of this discovery dispute – including the wage and hour information that Plaintiff seeks in order to evaluate the PAGA claim. *See Austin*, 2018 U.S. Dist. LEXIS 36685, 2018 WL 1168694, at *3; *see also Artis v. Deere & Co.*, 276 F.R.D. 348, 353 (N.D. Cal. 2011) (finding the potential privacy interests of putative class members in their contact information adequately balanced when the parties could craft a protective order limiting disclosure and the information was only to be produced to plaintiff's counsel and used in that litigation). When the circumstances involve information more sensitive than mere contact information (such as, for example, the wage and hour information involved in the present case), a *Belaire-West* notice, or other protections that a court may fashion beyond a protective order, may be necessary. *See id.* ("Courts in [the Northern] [D]istrict generally have required *Belaire-West* notices only when there are special privacy concerns, such as the disclosure of medical or financial information, and/or when the parties have agreed to such notice."); *see also Bottoni v. Sallie Mae*, No. C 10-03602 LB, 2012 U.S. Dist. LEXIS 76451, 2012 WL 8304347, at *3 (N.D. Cal. June 1, 2012) ("The court's general view is that ordinarily, protective orders are enough, but this case involves special privacy concerns because the class members defaulted on their loans."). While the wage and hour information contained in the RFPs in question is more than just contact information, it is also less sensitive than medical information or information about defaulting on loans as was the case in *Bottoni*. Accordingly, to preserve and protect the class members' and

aggrieved employees' interests, the court will (as described below) fashion certain protections that go beyond simple reliance on the protective order, but that are substantially less costly and time-consuming than the *Belaire-West* notice procedure.

As mentioned, although most courts do not require parties to notify putative class members or potentially aggrieved employees of the disclosure of their contact information when a protective order is in place, some courts have fashioned other safeguards. *See e.g.*, *Benedict v. Hewlett-Packard Co.*, No. 13-CV-0119-LHK, 2013 U.S. Dist. LEXIS 89225, 2013 WL 3215186, at *3 (N.D. Cal. June 25, 2013) (ordering plaintiff's counsel to "inform each potential putative class member contacted by Plaintiff that he or she has a right not to talk to counsel and that, if he or she elects not to talk to counsel, Plaintiff's counsel will terminate the contact and not contact them again."); *see also Austin*, 2018 U.S. Dist. LEXIS 36685, 2018 WL 1168694, at *3 ("[M]indful of the putative class members' privacy rights, the court orders Plaintiffs' counsel to inform each contacted putative class member that he or she has the right not to talk to counsel and, upon a declination, counsel shall immediately terminate the conversation and will not contact that individual again. Plaintiffs' counsel must also inform each contactee that the court compelled [defendant] to disclose employee contact information, and that the contact information was provided solely for this lawsuit and cannot be distributed for other uses."). While the individuals and entities that contracted with Defendant as employees and contractors do have a legally protected privacy interest in their contact information, they do not, however, have a reasonable expectation that their information would be withheld from a plaintiff seeking to prove labor law violations committed against them. *See Williams v. Superior Court*, 3 Cal. 5th 531, 554-55 (2017). The release of the contact information at issue is not a "serious" invasion because this information is not particularly sensitive and outside disclosure will be restricted by the protective order which will limit disclosure to the parties in this case, for the sole purpose of litigating this case. *See Artis*, 276 F.R.D. at 353; Austin, 2018 U.S. Dist. LEXIS 36685, 2018 WL 1168694, at *2.

In short, mindful of the privacy rights at issue here, Plaintiff's counsel is **ORDERED** to inform each contacted individual or entity (at the very outset of the communication) that he or she has the right not to talk to counsel and, upon a declination, counsel shall immediately terminate

8

1   the conversation, and counsel is **ORDERED** to not contact that individual or entity again.

2   Plaintiff's counsel is also **ORDERED** to inform each person contacted that the court has

3   compelled Defendants to disclose their contact information, in addition to certain wage and hour

4   information, and that this information has been provided solely for this lawsuit and that it can

5   neither be distributed nor put to any other use.

6         The second category of disputed discovery largely pertains to Plaintiff's wrongful

7   termination claim and is encompassed in RFP Nos. 94 through 101. *See* Ltr. Br., Exh. C (dkt. 30)

8   at 28-33. Before addressing Defendant's generalized objection, the court will first address

9   Plaintiff's showing as to relevance and proportionality as to individual RFPs. Through RFP No.

10  96, Plaintiff seeks "all documents that refer or relate to any of your course curriculums that refer to

11  relate to blockchain." *See id*. at 29. In his portion of the Letter Brief, Plaintiff expends no effort at

12  all to explain the relevance or justify the proportionality of this sweeping and broad document

13  request – nor is it apparent to the undersigned why this material is relevant or proportional to the

14  needs of the case. Accordingly, Plaintiff's request to compel the material described in RFP No. 96

15  is **DENIED**. Similarly, in RFP No. 97, Plaintiff seeks "all documents that refer or relate to any of

16  your course curriculums that refer or relate to cryptocurrency." *Id*. at 30. In similar fashion,

17  Plaintiff's portion of the Letter Brief fails to establish the relevance of this request, or to make any

18  effort to justify its sweeping scope – neither is relevance or proportionality self-evident in the

19  request itself. Accordingly, Plaintiff's request to compel the material encompassed in RFP No. 97

20  is similarly **DENIED**.

21        However, the materials encompassed in RFP Nos. 94, 95, 98, 99, 100, & 101 are clearly

22  both relevant and proportional to the needs of the case. *See id*. at 28-29, 31-34. Defendant's

23  objection to producing these materials – without any citation to authority for such a refusal –

24  simply suggests that "the instant requests should be directed to the Maryland matter. *See id*. at 6.

25  The court disagrees because these requests are all clearly relevant to several (if not more) of the

26  fifty-one affirmative defenses advanced by Defendant *in this case*, and there they are clearly

27  within Rule 26's scope of discovery *in this case* – despite the fact that they may also fall within

28  the permissible scope of discovery in another case as well. In other words, the simple fact of the

pendency of two cases does not absolve a party of its discovery obligations in either case; thus, Defendant's objection is **OVERRULED** and Defendant is **ORDERED** to provide the discovery encompassed in RFP Nos. 94, 95, 98, 99, 100, & 101 forthwith. To the extent that Defendant's portion of the letter brief (somewhat obliquely) contends that it has already discharged that obligation as to these RFPs, Defendant is **ORDERED** to file a notice on the docket of this case certifying its full and complete compliance as to these RFPs in this case.

The third, and final, category of disputed discovery relates to Defendant's objections to the use of common terms (e.g., "you," "refer," "relate," evidence," agreement," "commissions," "decision," "job performance," and "complaints") as vague and ambiguous. *See id*. at 6-7; *see also id*., Exh. A, at 10-13. Plaintiff contends that these objections are frivolous, and Defendant's only response is to state in conclusory and summary fashion that "CCR disputes [that] any objections were waived or are frivolous or inappropriate." *Id*. at 7. The court disagrees with Defendant's characterization of its objections as non-frivolous and appropriate. For example, in Special Interrogatory No. 1, Plaintiff's asks: "If you contend that you paid Plaintiff all commissions due, please state all facts that support your contention." *Id*. at 10. Defendant's objection asserts that terms such as "you," "contend," "due," and "support," are vague and ambiguous. *See id*. This is the textbook example of a hopelessly frivolous objection that appears designed to obstruct Plaintiff's access to evidence, to gum up the works of the litigation, and to evade and escape the obligation to effectuate the discovery process. This is especially egregious in light of the fact that Defendant has employed many of these same terms in the formulation and expression of its fifty-one affirmative defenses – further undermining any notion that these objections were lodged with even the slightest hint of sincerity. *See* Def.'s Answer to FAC (dkt. 1-1) at 52 (wherein Defendant contends that "Plaintiff was paid all wages *due* to him on a timely basis . . .") (emphasis added). Indeed, in addition to objecting to the use of the word "due" as vague and ambiguous as used by Plaintiff in Special Interrogatory No. 1, Defendant submitted a non-responsive "supplemental response" to that very same interrogatory that – without a hint of embarrassment – turned right around and made use of the very same term ("due") that Defendant had just contended was vague: "Plaintiff was paid all commissions *due* in accordance with his agreement with Defendant. In fact,

1  Defendant overpaid Plaintiff a significant sum of money." *See* Ltr. Br., Exh. A (dkt. 30) at 10-11.
2  First, the court does not appreciate having its time wasted when parties play games with words;
3  second, Defendant's supplemental response is still non-responsive and yet another instance of
4  what is appearing to be a pattern of obstructionism. The court will take this opportunity to warn
5  Defendant's counsel to refrain from trespassing upon the court's patience, as any further
6  appearances of frivolous objections, rhetorical games, non-responsive answers, or any other such
7  artifice will most assuredly be met with appropriate sanctions. For these reasons, as to the specific
8  Special Interrogatories attached to the Letter Brief as Exhibit A, Defendant's objections are
9  **OVERRULED** and Defendant is **ORDERED** to *properly* answer each interrogatory in a
10 *complete* and responsive fashion forthwith.

## CONCLUSION

As set forth herein, Plaintiff's requests to compel are **GRANTED in part and DENIED in part.** The court feels compelled to remind the Parties that a bedrock principle of federal litigation is that "[d]iscovery is supposed to proceed with minimal involvement of the Court." *See Cardoza v. Bloomin' Brands, Inc.*, 141 F. Supp. 3d 1137, 1145 (D. Nev. 2015). In light of that, discovery disputes should be presented to the court only as a last resort and only when the underlying dispute implicates truly significant interests. *See e.g.*, *In re Convergent Techs. Securities Litig.*, 108 F.R.D. 328, 331 (N.D. Cal. 1985)); *see also Miranda Dairy v. Harry Shelton Livestock, LLC*, No. 18-cv-06357-RMI, 2020 U.S. Dist. LEXIS 197775, at *13-14 (N.D. Cal. Oct. 22, 2020) (Warning that "counsel should be mindful that discovery is the responsibility of the parties and turning to the court to resolve a discovery dispute should only be used as a last resort. While the court does have a duty to actively and effectively manage the discovery process such as to ensure that the parties have efficient access to necessary discovery while eliminating unnecessary and wasteful discovery, at the same time, it goes without saying that this duty is not automatically triggered each and every time counsel can conjure up one or another thing about which to disagree. Attorneys practicing in this court are expected to seek court involvement in discovery disputes only as a last resort, and only when the dispute implicates truly significant interests that counsel cannot resolve through reasonable cooperation during the meet-and-confer

process. Neither party has presented any indication at all that this was done here."). It should also be noted that an important function that is served by an effective and efficient discovery process is to reveal what evidence the opposing party has, thereby helping to determine which facts are undisputed (which might pave the way for a summary judgment motion) and which facts must be resolved at trial; the degree of obstructionism described herein impedes and impairs this important function. Accordingly, going forward, the court expects counsel to refrain from employing the sort of scorched-earth approach to discovery and objections thereto that has been the hallmark of the set of discovery disputes described herein.

**IT IS SO ORDERED.**

Dated: November 2, 2021

_____
ROBERT M. ILLMAN
United States Magistrate Judge